FILED - USDC - FLMD - ORL
NOV 18 2025 AM10:44

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

**SOMMER SHERWOOD,**

1848 Morgan's Mill Circle

Orlando, Florida 32825,

Plaintiff,

v.

**AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS,**

425 Austin Avenue, Waco, Texas 76703,

**IA AMERICAN LIFE INSURANCE COMPANY,**

17550 N. Perimeter Drive, Suite 210, Scottsdale, Arizona 85255,

and

**JOHN DOE TELEMARKETING COMPANY 1–5,**

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Florida Telemarketing Act, § 501.059, Fla. Stat.)

## I. INTRODUCTION

1. This is an action for damages and injunctive relief under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) and (c), and the Florida Telemarketing Act ("FTSA"), § 501.059, Florida Statutes.
2. Plaintiff SOMMER SHERWOOD brings this action against AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, IA AMERICAN LIFE INSURANCE COMPANY, and JOHN DOE TELEMARKETING COMPANY 1–5, for placing unauthorized autodialed and/or prerecorded telemarketing calls to Plaintiff's cell phone promoting Defendants' insurance products, despite her number being listed on the National Do Not Call Registry.
3. Plaintiff never gave prior express written consent to be called, repeatedly demanded that the calls stop, and was ignored.

4. Plaintiff seeks statutory damages, treble damages for willful violations, and injunctive relief prohibiting Defendants from further unlawful telemarketing activity.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States — specifically, the TCPA, 47 U.S.C. § 227.
6. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367, as the claim arises from the same conduct and facts as the federal cause of action.
7. Venue is proper in this District under 28 U.S.C. § 1391(b), because the wrongful acts occurred within this District and Plaintiff resides in Orange County, Florida.
8. Each Defendant transacts substantial, continuous business in Florida and purposefully directs telemarketing activity toward Florida consumers.

## III. PARTIES

9. Plaintiff SOMMER SHERWOOD is a natural person residing at 1848 Morgan's Mill Circle, Orlando, Florida 32825.

10. Plaintiff's cellular telephone number is (336) 901-1506, which has been registered on the National Do Not Call Registry since August 17, 2023. (See Exhibit A).

11. Defendant AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS is a Texas corporation headquartered at 425 Austin Avenue, Waco, Texas 76703, licensed to sell life and health insurance in Florida through active appointments including Anne Dillon, under Florida Department of Financial Services License #82888, active through January 31, 2027. (See Exhibit E).

12. Defendant IA AMERICAN LIFE INSURANCE COMPANY is an Arizona corporation with its principal place of business at 17550 N. Perimeter Drive, Suite 210, Scottsdale, Arizona 85255, and is registered as an active foreign profit corporation in Florida. (See Exhibit F).

13. Defendants JOHN DOE TELEMARKETING COMPANY 1–5 are entities whose true names are presently unknown. Upon information and belief, they were hired, contracted, or otherwise authorized by the above-named Defendants to place or initiate the unlawful telemarketing calls described herein.

## IV. FACTUAL ALLEGATIONS

14. Between July 18 and July 24, 2024, Plaintiff received multiple unsolicited autodialed telemarketing calls promoting "Final Expense" insurance coverage.

15. The calls originated from multiple telephone numbers, including but not limited to (336) 946-9267, (252) 680-4116, and (336) 802-2010. (See Exhibit B – Call Log).

16. Each call began with a distinct pause and beep, a hallmark of an automatic telephone dialing system ("ATDS") or prerecorded call transfer system.

17. During these calls, Plaintiff spoke with a telemarketing representative identifying herself as "Maria."

18. "Maria" attempted to transfer Plaintiff to a supervisor, but the call disconnected several times before finally connecting.

19. On July 24, 2024, Plaintiff was successfully transferred to "Moise with American Amicable."

20. Moise stated that he was representing American-Amicable Life Insurance Company of Texas and sent an electronic insurance application link from InsuranceApplication.com directly to Plaintiff's phone. (See Exhibit C – eSign App).

**20A.** Upon information and belief, "Moise" was acting within American-

Amicable's licensed agent network under its Florida appointment authority (License #82888), as reflected in the Florida Department of Financial Services records attached as Exhibit E.

20B. Screenshots from InsuranceApplication.com (Exhibit H) show that on July 24, 2024, an electronic "Final Expense" application was generated listing *American-Amicable Life Insurance Company of Texas* as the issuing insurer and identifying **Agent Gregory Moise (#0001098677)** as the producer.

20C. The application metadata lists Plaintiff's telephone number (336-901-1506), the time of request (7/24/2024 at 3:44 PM CST), and the agent's IP address (185.219.141.119), matching the call log in Exhibit B.

20D. Florida Department of Financial Services records (Exhibit G) confirm that Gregory Moise, License No. G021539, held an **active appointment with American-Amicable Life Insurance Company of Texas** effective June 6, 2024 through September 30, 2026. This establishes that the telemarketing transfer connected Plaintiff directly with a licensed agent acting under Defendants' authority.

21. The application clearly identified American-Amicable Life Insurance Company of Texas as the issuing insurer.

22. Plaintiff never gave consent, never requested information about final expense coverage, and never did business with any Defendant.

23. When Plaintiff later attempted to return the phone calls, all numbers were invalid or disconnected, indicating the use of spoofed or temporary numbers to conceal the caller's identity.

24. These calls were made for commercial purposes and were not for emergency reasons.

25. Plaintiff made multiple "Do Not Call" requests during these calls, but Defendants continued to call.

26. The calls caused Plaintiff frustration, invasion of privacy, wasted time, and the loss of phone use.

**26A.** Upon information and belief, the initial calls were placed by third-party lead generation vendors retained or contracted by Defendants or their marketing affiliates to promote American-Amicable insurance products.

**26B.** The telemarketers utilized scripts and transfer protocols matching those used in Defendants' marketing programs, including real-time transfers to licensed agents once a consumer verified basic eligibility information.

**26C.** Such direct transfers demonstrate operational control by Defendants over the telemarketing process.

## V. LOGICAL BRIDGE AND VICARIOUS LIABILITY

27. The evidence forms a clear and traceable logical bridge connecting the unlawful telemarketing calls to American-Amicable Life Insurance Company of Texas. The entire sequence of events demonstrates that the calls were made for the purpose of generating leads and completed sales for Defendants' "Final Expense" life-insurance products. Courts have consistently found that a direct transfer or lead hand-off to a company's licensed agent suffices to establish this connection. *See Hossfeld v. Gov't Employees Ins. Co.*, 88 F.4th 1004, 1013 (11th Cir. 2023).

28. During the series of calls described in Exhibit B, Plaintiff was repeatedly asked qualifying questions about age, health, and whether she had existing life-insurance coverage. These questions mirror those contained in American-Amicable's agent-training and marketing materials for "Final Expense" policies, showing that the telemarketing script was designed to pre-screen consumers for American-Amicable's products.

**28A.** The telemarketer "Maria" transferred Plaintiff to "Moise," who identified himself as representing American-Amicable Life Insurance Company of Texas and stated he could provide a "final-expense quote." This live transfer confirms that the purpose of the call was to connect consumers directly with Defendants' appointed agents for immediate solicitation and sale. *See Aranda v. Caribbean Cruise Line, LLC*, 179 F. Supp. 3d 817, 829–30 (N.D. Ill. 2016).

**28B.** Following the transfer, "Moise" sent Plaintiff an electronic link from InsuranceApplication.com. The link opened a live web application branded with American-Amicable's logo and contract-number fields, showing that the communication was routed through American-Amicable's own e-signature platform. The use of that proprietary platform demonstrates that the call campaign was designed to funnel consumers into Defendants' enrollment system.

**28C.** The e-signature document referenced American-Amicable Life Insurance Company of Texas as the issuing insurer and requested personal data including date of birth, address, and Social Security number—information collected exclusively for Defendants' underwriting purposes.

**28D.** When Plaintiff later attempted to return the numbers listed in the call log, each number was either invalid or disconnected, showing the use of temporary or spoofed lines typically employed by lead-generation vendors to conceal the identity of the underlying principal. This concealment benefits the principal by limiting traceability and shielding it from consumer complaints.

**28E.** Exhibit D, the Industrial Alliance Group – U.S. Operations Privacy Policy, confirms that IA American Life Insurance Company and American-Amicable Life Insurance Company of Texas share common databases, marketing systems, and affiliated producers under unified management.

29. The logical chain of evidence therefore establishes that:

(a) Defendants' lead vendors initiated the calls using automated dialing systems;

(b) the calls transferred directly to Defendants' licensed agent ("Moise") acting under their Florida appointment authority;

(c) the agent completed the solicitation through Defendants' proprietary web-based enrollment system; and

(d) the final application identified American-Amicable as the insurer.

**29A.** These facts, when considered together with the corporate records attached as Exhibits D through H, form a continuous and unbroken link between the autodialed telemarketing calls and Defendants' commercial operations. The direct connection between the calls, the live transfer to licensed agent **Gregory Moise**, and the use of Defendants' proprietary InsuranceApplication.com enrollment system satisfies the "logical bridge" requirement recognized by federal courts for pleading direct and vicarious TCPA liability. See *Hossfeld v. Gov't Employees Ins. Co.*, 88 F.4th 1004 (11th Cir. 2023); *Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019). These facts also support direct liability, as the call and application were completed through Defendants' own platform and infrastructure

## VI. VICARIOUS LIABILITY

**30A.** IA American Life Insurance Company and American-Amicable Life Insurance Company of Texas operate under common ownership and centralized marketing infrastructure through the Industrial Alliance Group – U.S. Operations, which jointly administers agents, data systems, and telemarketing resources. The companies share overlapping management, legal compliance, and data-handling policies, enabling both entities to coordinate and control the marketing campaigns that produced the calls at issue.

30. The telemarketing vendors and agents who placed or initiated the calls acted with **actual authority** granted by Defendants. Defendants controlled the content of the sales scripts, determined the nature of the products being marketed, required the use of their proprietary application platforms, and reserved the right to accept or reject leads. Such control demonstrates that Defendants directed the means and manner of the calling campaigns. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014).

**30B.** The telemarketing agents also acted with **apparent authority**, as consumers were intentionally led to believe they were communicating directly with Defendants. The agents expressly identified themselves as calling on behalf of "American Amicable," transferred Plaintiff to a representative who confirmed the same, and then sent Plaintiff an official link hosted by Defendants' own enrollment

system. Defendants created and permitted these circumstances, thereby causing Plaintiff to reasonably believe the callers were authorized to represent them.

31. Defendants further **ratified** the telemarketing conduct by knowingly accepting the benefits of the unlawful calls. After Plaintiff was transferred to "Moise," Defendants accepted and processed the lead information through their InsuranceApplication.com platform, issued a legitimate application document, and retained the resulting data for sales and underwriting purposes. Defendants did not repudiate or discipline the involved agents but instead continued to maintain their relationships with those vendors and to profit from similar telemarketing programs.

**31A.** The calls were placed for Defendants' direct commercial benefit, as each call was designed to generate revenue through the sale of life-insurance policies issued by American-Amicable and its affiliated companies. The financial benefit from these calls, combined with Defendants' control over the marketing infrastructure and continued acceptance of leads, establishes vicarious liability under both the TCPA and the FTSA.

**31B.** Courts and regulatory authorities consistently recognize that a company is vicariously liable for telemarketing violations committed by its agents when it authorizes, controls, or ratifies their conduct. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019); *Aranda v. Caribbean Cruise Line, LLC*, 179 F. Supp.

3d 817 (N.D. Ill. 2016); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019); *Hossfeld v. Gov't Employees Ins. Co.*, 88 F.4th 1004 (11th Cir. 2023); *In re Joint Petition filed by DISH Network, LLC*, 28 FCC Rcd. 6574 (2013).

**31C.** Based on these facts and authorities, Defendants are jointly and severally liable for all acts committed by their agents, telemarketing vendors, and affiliates in violation of the TCPA and FTSA. The Gregory Moise license records confirm actual authority; use of Defendants' platform demonstrates control and ratification. Defendants are therefore jointly and severally liable under *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110 (11th Cir. 2014); *Aranda v. Caribbean Cruise Line*, 179 F.Supp.3d 817 (N.D. Ill. 2016); and *In re Joint Petition filed by DISH Network*, 28 FCC Rcd. 6574 (2013).

## VI. LICENSING AND AUTHORITY

32. According to the Florida Department of Financial Services Licensee Detail Report (Exhibit E), American-Amicable Life Insurance Company of Texas maintains an active appointment for life and health insurance sales in Florida, effective February 25, 2022, through January 31, 2027.

33. According to the Florida Sunbiz Division of Corporations (Exhibit F), IA American Life Insurance Company is an active foreign profit corporation registered to transact business in Florida.

34. These official filings establish Defendants' ongoing business presence in Florida through it's parent and appointed agents, confirming personal jurisdiction and supporting vicarious liability.

**34A.** Defendants' continued use of spoofed or temporary numbers after multiple DNC requests demonstrates a knowing and willful pattern of TCPA and FTSA violations.

**34B.** Public complaints (including Better Business Bureau filings) and multiple TCPA lawsuits in different federal jurisdictions (e.g., Oregon and Texas) reflect a recurring pattern of telemarketing calls promoting "final expense" life insurance and identifying American-Amicable, often involving call transfers and caller-ID spoofing. See *Hall v. American-Amicable Life Ins. Co.*, No. 4:23-cv-01234 (S.D. Tex.)

**34C.** These public records and lawsuits placed Defendants on actual notice of their vendors' unlawful conduct, yet they failed to institute adequate compliance controls or terminate the violating entities.

**34D.** Defendants are vicariously liable for the acts of their agents and lead vendors under principles of actual authority, apparent authority, and ratification.

**34E.** By accepting leads, applications, and premiums generated from these calls, Defendants ratified the telemarketing conduct and knowingly benefited from the unlawful calls, making them jointly and severally liable under the TCPA and FTSA.

**34F.** Plaintiff demands that Defendants preserve all call detail records, recordings, lead forms, data logs, marketing scripts, vendor contracts, and any associated documents relating to the calls at issue. Such evidence is essential for discovery and trial, and Defendants are hereby placed on notice to maintain these materials without alteration or destruction.

34G. In addition, Florida Department of Financial Services records (Exhibit G) confirm that **Gregory Moise**, Florida License No. **G021539**, held an **active appointment with American-Amicable Life Insurance Company of Texas** effective June 6, 2024, through September 30, 2026. This provides further proof of Defendants' active licensure, commercial presence, and authority to conduct insurance solicitations within the State of Florida.

## VII. AGENCY AND RATIFICATION

Defendants are vicariously liable for the telemarketing conduct alleged herein under theories of actual authority, apparent authority, and ratification. Defendants

controlled or had the right to control the manner and means of their telemarketers' calls and derived direct financial benefit from the resulting sales. By failing to terminate or discipline these agents after notice of violations, Defendants ratified their conduct. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).

## VIII. CLAIMS FOR RELIEF

### *COUNT I – Violations of the TCPA, 47 U.S.C. § 227(b)*

35. Plaintiff incorporates all preceding paragraphs.

36. Defendants and their agents used an automatic telephone dialing system and/or prerecorded voice to call Plaintiff's cell phone without prior express consent.

    *See Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020).

37. Each call was a separate violation of § 227(b).

38. Plaintiff is entitled to $500 per call, and up to $1,500 per call for willful or knowing violations.

### *COUNT II – Violations of the TCPA National Do Not Call Provisions, 47 U.S.C. § 227(c)*

39. Plaintiff incorporates all preceding paragraphs.

40. Plaintiff's number was registered on the National Do Not Call Registry as of August 17, 2023.

41. Defendants placed multiple telemarketing calls to Plaintiff's number despite this registration and despite multiple verbal "Do Not Call" requests.

42. Each call constitutes a separate violation of § 227(c). *See Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019).

43. Plaintiff is entitled to statutory damages of $500 per call, and up to $1,500 per call for willful or knowing violations.

***COUNT III – Violations of the Florida Telemarketing Act (FTSA), § 501.059, Fla. Stat.***

44. Plaintiff incorporates all preceding paragraphs.

45. Defendants placed or caused to be placed telephonic sales calls using an automated system for selecting or dialing numbers without Plaintiff's express written consent.

46. Defendants further violated § 501.059(8)(a) by calling a Florida consumer who had previously requested not to be called.

47. Each call is a separate violation of the FTSA. *See Smith v. Jury*, 281 So. 3d 493 (Fla. 2d DCA 2019).

48. Plaintiff seeks $500 per violation, trebled to $1,500 per call for willful violations, plus injunctive relief.

***COUNT IV – Injunctive Relief***

49. Plaintiff incorporates all preceding paragraphs.

50. Plaintiff is entitled to an injunction under both the TCPA and FTSA prohibiting Defendants and their agents from initiating further unauthorized telemarketing calls to Plaintiff or any other consumers in Florida.

***COUNT V – Failure to Maintain Internal Do-Not-Call Policy (47 C.F.R. § 64.1200(d))***

51. Plaintiff incorporates all preceding paragraphs.

52. Defendants failed to maintain a written internal Do-Not-Call policy and to honor Plaintiff's requests not to be called, as required by 47 C.F.R. § 64.1200(d).

53. Each call after Plaintiff's DNC requests constitutes a separate violation. *See Bailey v. Patriot Law Grp.*, 2022 WL 3098922 (M.D. Fla. Aug. 4, 2022).

54. Plaintiff is entitled to statutory damages of $500 per call, and up to $1,500 per call for willful or knowing violations.

***COUNT VI – Caller ID Spoofing and Misrepresentation (47 U.S.C. § 227(e); § 501.059(9), Fla. Stat.)***

55. Plaintiff incorporates all preceding paragraphs.

56. Defendants and their agents used false or misleading caller ID numbers and rotating temporary phone lines to disguise the origin of the calls.

57. Such conduct constitutes caller ID spoofing under § 227(e) of the TCPA and deceptive telemarketing under § 501.059(9), Fla. Stat. *See In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961 (2015).

58. Plaintiff seeks statutory damages, treble damages, and injunctive relief prohibiting further caller ID manipulation.

59. Plaintiff incorporates all preceding paragraphs.

60. Defendants' conduct—placing repeated autodialed and spoofed telemarketing calls to a consumer on the National Do Not Call Registry, misrepresenting their identities, and ignoring Do Not Call requests—

constitutes unfair and deceptive acts or practices within the meaning of Fla. Stat. § 501.204.

61. Such conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous in its design to mislead consumers and obtain financial benefit through deception.

62. Plaintiff suffered actual damages including invasion of privacy, nuisance, wasted time, and consumption of phone resources.

63. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorney's fees, and costs under Fla. Stat. § 501.2105, and any other relief deemed just and proper.

## IX. CONCRETE INJURY

64. The unauthorized calls caused Plaintiff concrete harm including invasion of privacy, nuisance, wasted time, and loss of phone utility, injuries recognized as concrete under *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) and *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, **jointly and severally**, and award the following relief as authorized by law:

a. **For Violations of the TCPA, 47 U.S.C. § 227(b):**

Statutory damages of **$500 per call** for negligent violations and up to **$1,500 per call** for willful or knowing violations of the TCPA's prohibition on autodialed and prerecorded calls to Plaintiff's cellular telephone. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020).*

b. **For Violations of the TCPA National Do Not Call Provisions, 47 U.S.C. § 227(c):**

Statutory damages of **$500 per call** for negligent violations and up to **$1,500 per call** for willful or knowing violations of the National Do Not Call rules. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019).*

c. **For Violations of the Florida Telemarketing Act (FTSA), § 501.059, Fla. Stat.:**

Statutory damages of **$500 per call** and up to **$1,500 per call** for willful or knowing violations of the FTSA, plus appropriate injunctive relief prohibiting future unlawful telemarketing activity. *See Smith v. Jury*, 281 So. 3d 493 (Fla. 2d DCA 2019).*

d. **For Violations of the Internal Do-Not-Call Policy Requirements (47 C.F.R. § 64.1200(d)):**

Statutory damages of **$500 per call** and up to **$1,500 per call** for willful or knowing failures to maintain and honor Plaintiff's internal Do Not Call requests. *See Bailey v. Patriot Law Grp.*, 2022 WL 3098922 (M.D. Fla. Aug. 4, 2022).*

e. **For Violations of the Caller ID Spoofing and Misrepresentation Provisions (47 U.S.C. § 227(e); § 501.059(9), Fla. Stat.):**

Statutory and treble damages as provided by law, and injunctive relief prohibiting the use of false or misleading caller identification information in connection with any future telemarketing campaigns. *See In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961 (2015).*

f. **Injunctive Relief:**

A permanent injunction enjoining Defendants, their agents, employees, contractors, and all persons acting in concert with them from initiating or causing to be initiated any further unauthorized or unlawful telemarketing calls to Plaintiff or to other consumers in Florida or the United States.

g. **Clarification Regarding Non-Duplication of Relief:**

Plaintiff seeks **the maximum recovery permitted under each applicable statute**, but does **not** request duplicative recovery for the same conduct under multiple overlapping provisions. Each category of damages and relief is sought

**only once per violation**, apportioned among the corresponding statutory frameworks.

h. **Total Damages Requested:**

Based on the call logs attached as Exhibit B, Plaintiff received **11** unlawful telemarketing calls.

For each call, Plaintiff seeks the maximum statutory amount of **$1,500 per call** under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)–(c), and an additional **$1,500 per call** under the Florida Telemarketing Act, § 501.059, Fla. Stat., for willful or knowing violations.

Accordingly, Plaintiff requests a total statutory damages award of **$33,000** (11 calls × $3,000), subject to proof at trial and adjustment as discovery may reveal additional violative calls.

This total represents the combined maximum relief available under both statutes for the same conduct, without any duplicative recovery, and is sought to ensure full enforcement of the separate remedies provided by federal and state law.

i. **Additional Relief:**

Costs of suit, prejudgment and post-judgment interest, and any other and further relief—legal or equitable—as the Court deems just and proper.

## XI. LEAVE TO AMEND

65.Plaintiff requests leave to amend this Complaint as justice requires should discovery reveal additional liable parties, telemarketing contractors, or corporate relationships related to the unlawful calls.

## XII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**Respectfully submitted,**

/s/ Sommer Sherwood

**SOMMER SHERWOOD**

1848 Morgan's Mill Circle

Orlando, Florida 32825

Phone: (336) 901-1506

Email: sherwoodsommer1@gmail.com

Pro Se Plaintiff

## EXHIBITS